# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ADAM COX, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BOMBARDIER, INC., and )<br>DOW CHEMICAL CANADA, INC., )<br>)<br>Defendants. )<br>) | Case No: 3:04-1059<br>JUDGE HAYNES/KNOWLES |

## MEMORANDUM

Plaintiff, Adam Cox, a Tennessee citizen, filed this action under 28 U.S.C. § 1332, the federal diversity jurisdiction statute, against Defendants, Bombardier, Inc. and Dow Chemical Canada, Inc., Canadian corporations, for personal injury resulting from an exploding watercraft, a "Sea-Doo SPX" manufactured by Bombardier, Inc. with components manufactured by Dow Chemical Company, Inc. Plaintiff seeks compensatory damages.

Before the Court is Dow Chemical Canada's (hereinafter "DCCI") motion to dismiss for lack of *in personam* jurisdiction (Docket Entry No. 19), contending, in sum, that the Court lacks general jurisdiction over DCCI and also lacks specific jurisdiction over DCCI.

In their joint response (Docket Entry No. 26), Plaintiff and Defendant Bombardier assert, in sum, that Defendant DCCI waived its Rule 12(b)(2) objection and the Court should permit discovery to investigate jurisdictional facts. In an Order dated September 7, 2005 (Docket Entry No. 32), the Court ordered the parties to complete discovery on the issue of the Court's exercise of personal jurisdiction over Defendant DCCI by November 10, 2005. Plaintiff and Defendant

Bombardier then filed a motion for extension to time to complete discovery (Docket Entry No. 43), which the Court granted (Docket Entry No. 51, Order), giving the parties until November 22, 2005 to complete discovery.

In its reply (Docket Entry No. 30), Defendant DCCI contends, in sum, that: (1) in light of Federal Rule of Civil Procedure 12(b)(2), binding Sixth Circuit precedent and the local rules of the Middle District, DCCI properly filed its notice of appearance and its motion to dismiss on the basis of *in personam* jurisdiction; (2) Defendant DCCI did not "sandbag" Plaintiff into withdrawing his motion for a default judgment; and (3) based on the facts and law set forth in Defendant DCCI's motion to dismiss, the Court should dismiss DCCI from this action for lack of *in personam* jurisdiction.

In his final argument in support of personal jurisdiction (Docket Entry No. 58), Plaintiff asserts, in sum, that: (1) the legal standard favors the Plaintiff; (2) Defendant DCCI waived its objection to personal jurisdiction by filing a general appearance without limitation and by "sandbagging" Plaintiff's counsel by soliciting a withdrawal of Plaintiff's motion for default and an extension of the answer deadline without any hint that personal jurisdiction was disputed; (3) Defendant DCCI uses Dow Chemical as its U.S. distributor in the global marketplace; (4) Defendant DCCI, the subsidiary of Dow Chemical, is subject to personal jurisdiction based on the contact of its parent; (5) Defendant DCCI sold WOODSTALK and used a Nashville distributor; and (6) Defendant DCCI failed to cooperate in discovery.

In its reply to Plaintiff's final argument (Docket Entry No. 61), Defendant DCCI contends, in sum, that: (1) general jurisdiction does not exist because, at the time the complaint was filed, Defendant DCCI did not have systematic and continuous contacts with Tennessee; (2) specific

2

jurisdiction does not exist because neither Defendant DCCI nor UCCI/Wedco had minimum contacts with Tennessee that gave rise to the basis of the lawsuit; (3) Defendant DCCI's filing of a notice of appearance does not constitute a waiver of the defense of personal jurisdiction; (4) Defendant DCCI is not subject to jurisdiction in Tennessee even it its corporate parent, TDDC, is subject to jurisdiction here; and (5) Plaintiff's failure to show that Defendant DCCI is subject to jurisdiction in this forum results from the absence of a factual basis for such jurisdiction.

For the reasons set forth below, the Court concludes that Plaintiff has not demonstrated the existence of a *prima facie* case of personal jurisdiction over the Defendant DCCI. Accordingly, the Defendant DCCI's motion to dismiss should be granted.

## A. REVIEW OF THE RECORD

Defendant, Bombardier, Inc. is a Canadian corporation d/b/a Bombardier Recreation Products. (Docket Entry No. 13, page 1). Defendant Bombardier designs and manufactures business jets, regional aircraft, rail transportation equipment and motorized recreational products, such as Sea-Doo watercraft. Id. at 3. Bombardier manufactured the Sea-Doo SPX watercraft involved in this case. Id.

Prior to 1998, Union Carbide Canada, which was a wholly-owned subsidiary of the Union Carbide Corporation, had an unincorporated division known as Wedco Moulded Products. (Docket Entry No. 20 at page 3, Memorandum in Support of Defendant DCCI's Motion to Dismiss). Wedco Moulded Products (hereinafter "Wedco") produced moulded polyurethane products manufactured, advertised and sold exclusively in Canada, including the gas tanks and filler necks at issue in this litigation. Id. at 3-4. The gas tanks and filler necks that are the subject of this litigation were sold by Union Carbide Canada to Defendant Bombardier in Canada pursuant to purchase order

3

agreements entered into in Canada. Id. at 3-4. Union Carbide Canada sold Wedco in February 1998 to a wholly-unrelated group known as Madison Capital Partners. Id. at 4. In February 2001, the Dow Chemical Company, parent company of Defendant DCCI, acquired the Union Carbide Corporation, which became a wholly-owned subsidiary of the Dow Chemical Company. Id. at 3. In October 2001, the Union Carbide Corporation amalgamated with Defendant DCCI, and the surviving entity is Defendant DCCI. Id. Defendant DCCI is a Canadian corporation and a wholly-owned subsidiary of the Dow Chemical Company, Inc. (Docket Enrty No. 13 at page 2).

On May 22, 2004, Plaintiff, a citizen of the State of Tennessee, was operating his girlfriend's Sea-Doo SPX, model number ZZ950006B695877, on Old Hickory Lake in Gallatin, Sumner County, Tennessee. Id. at 1, 3-4. Plaintiff pulled up to Lock 4 Marina to refuel the Sea-Doo. Id. at 3. After Plaintiff finished refueling, he then tried to start the Sea-Doo, but it would not start. Id. at 3-4. Plaintiff checked the spark plug boot when, suddenly and without warning, the Sea-Doo exploded. Id. at 4. The explosion blew Plaintiff into the lake, where he was rescued by a friend. Id. The explosion caused Plaintiff second and third-degree burns from his chin and down his arms, and all the way down his abdomen. Id.

### B. CONCLUSIONS OF LAW

As the party seeking assertion of *in personam* jurisdiction, Plaintiff bears the burden of showing that such jurisdiction exists. Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991) see also CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1261-62 (6th Cir. 1996). When, however, a district court rules on a jurisdictional motion to dismiss made pursuant to Fed. R. Civ. P. 12(b)(2) without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the Plaintiff. Id. at 1458-59. To defeat such a motion, Plaintiff need only

4

make a prima facie showing of jurisdiction, that is, some proof to support a finding of jurisdiction to avoid a motion to dismiss. Id. see also Welsh v. Gibbs, 631 F.2d 436, 438 (6th Cir. 1980).

As a threshold matter, the Court concludes that the Defendant did not waive its right to contest personal jurisdiction by filing a general appearance without limitation. Rule 12(b)(2) of the Federal Rules of Civil Procedure abolished the distinction between "special" and "general" appearances in 1938. Haile v. Henderson Nat'l Bank, 657 F.2d 816, 820, n.4 (6th Cir. 1981)("We note that a 'special appearance' to challenge jurisdiction is no longer necessary under the Federal Rules.") see also Griffen v. Abbot, 68 F.R.D. 241 (E.D. Tenn. 1975); 61A Am.Jur.2d Pleading § 390.

Plaintiff cites Reynolds v. International Amateur Athletic Foundation, 23 F.3d 1110, 1120 (6th Cir. 1991) in support of his argument regarding the distinction between special and general appearances, but the Court notes the Sixth Circuit's reference to Federal Rule of Civil Procedure 12(h). Because Federal Rule of Civil Procedure 12 abolished that distinction in 1938, the Court must construe the Sixth Circuit's language to mean that a party waives the right to contest personal jurisdiction by failing to raise the issue when making a responsive pleading or an appearance.

Further, the Court does not find persuasive Plaintiff's argument that he was "sandbagged" into withdrawing his motion for default. Plaintiff asserts that Defendant promised an answer in exchange for withdrawal of Plaintiff's motion for default and then sought an extension of time to file a responsive pleading because Defendant wanted its name corrected on the amended complaint. (Docket Entry No. 26 at page 4). In fact, the record shows that there was no such promise made by Defendant. An affidavit filed by Plaintiff's counsel reads as follows:

> On April 28, 2005, I received a telephone call (followed up by correspondence of the same date; see Exhibit 9) from Patrick Ferland, of the Canadian law

5

> firm Heenan Blaikie, of Montreal, Quebec, Canada, which represents
> Wedco Moulded Products Company. Mr. Ferland informed that Wedco was
> not the proper defendant to the suit *sub judice*; that the fuel tank in question
> would have been manufactured prior to the constitution of their client
> and its purchase of an unincorporated division of a third-party corporation;
> and that his firm had undertaken to contact the attorneys representing said
> corporation and inquire as to their intentions with regard to this matter. Mr.
> Ferland assured me that his firm would keep me informed; as such, I
> agreed to withdraw my motion for default.

(Docket Entry No. 27 at page 2, Affidavit of Clinton Kelly, counsel for Plaintiff).

Defendant DCCI filed its motion to extend the time to file responsive pleading (Docket Entry No. 17) on May 31, 2005, which the Court granted (Docket Entry No. 18, Order). Defendant DCCI's motion states that it, "...believes it will be able to show that it is entitled to dismissal pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure... [and] respectfully moves the Court to grant it an additional 20 days to submit the Rule 12(b)... motion." (Docket Entry No. 17). Further, Plaintiff's counsel did not object and submitted a written statement to Defendant DCCI stating: "I have today received your notice of appearance and motion to extend time to file responsive pleading. I have no objection to your requested extension, provided that it is for no longer than the 20 days mentioned." (Docket Entry No. 20, Ex. 2, Letter from Plaintiff's counsel to Defendant DCCI's counsel, dated June 2, 2005). The Court finds that Plaintiff was not "sandbagged" by Defendant DCCI.

There are two types of personal jurisdiction: "specific jurisdiction" and "general jurisdiction." As the Supreme Court explained, "when a state exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the state has been said to be exercising 'general jurisdiction' over the defendant." Helicopteros Nacionales de Columbia v. Hall, 466 U.S. 408, 414, n. 8, 9 (1984). In a word, general jurisdiction involves

contacts of a "continuous or systematic nature." Third Nat'l Bank v. Wedge Group, Inc., 882 F.2d 1987, 1089 (6th Cir. 1989). When a state exercises personal jurisdiction over a defendant's contacts with the forum, the state is exercising "specific jurisdiction" over the defendant. Id.

To determine whether personal jurisdiction exists over a defendant, federal courts apply the law of the forum state, subject to the limits of the Due Process Clause of the Fourteenth Amendment. Reynolds v. International Amateur Athletic Fed'n, 23 F3d 1110, 1115 (6th Cir. 1994). "[T]he defendant must be amenable to suit under the forum state's long-arm statute and the due process requirements of the Constitution must be met." Id. (citing In-Flight Devices Corp. v. Van Dusen Air, Inc., 466 F.2d 220, 224 (6th Cir. 1982)).

The Tennessee long-arm statute, Tenn. Code Ann. §§ 20-2-201–206, provides in pertinent part:

> (a) Any corporation claiming existence under the laws of the United States or any other state or of any country foreign to the United States, or any business trust found doing business in this state, shall be subject to suit here to the same extent that corporations of this state are by the laws thereof liable to be sued, so far as relates to any transaction had, in whole or in part, within this state or any cause of action arising here, but not otherwise.
>
> (b) Any such corporation or trust having any transaction with persons or having any transaction concerning any property situated in this state, through any agency whatever acting for it within the state, shall be held to be doing business here within the meaning of this section.

Tenn. Code Ann. §§ 20-2-201.

Under Tennessee law, the long-arm statute extends to the federal constitutional limits of due process, and an examination of those limits in federal court and Tennessee decisions on personal jurisdiction cases is required. The Tennessee long-arm statute is intended to reach "as far as the Due Process Clause of the Fourteenth Amendment permits; consequently, the issue is whether the assertion of *in personam* jurisdiction is consistent with due process." J.I. Case Corp. v. Williams 832

7

S.W.2d 530, 531 (Tenn. 1992)(citing Helicopteros Nacionales de Columbia, S.A., 466 U.S. 408 (1984)).

In Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-73 (1985), the Supreme Court outlined the factors for determining whether the District Court possesses personal jurisdiction:

> The due process clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "contacts, ties or relations." By requiring that individuals have "fair warning" that a particular activity may subject him to the jurisdiction of a foreign sovereign, the due process clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where the conduct will or will not render them liable to suit.
>
> Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this fair warning requirement is satisfied if the defendant has "purposefully directed" his activities at a resident of the forum, and the litigation results from the alleged injuries that "arise out of or relate to" those activities....
>
> Jurisdiction is proper however, where the contacts proximately result from actions by the defendant that create a "substantial connection" with the forum. Thus, where the defendant "literally" has engaged in significant activities within a state, or has created "continuing obligations" between himself and the residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum laws, it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

471 U.S. 471-78.

To be sure, "some single or occasional acts related to the forum" can support a finding of personal jurisdiction, but not if the "nature and quality and the circumstances of their commission create only an "attenuated" affiliation with the forum." 471 U.S. 457, n.2.

In Southern Machine Co., Inc. v. Mohasco Industries, Inc., 401 F.2d 374 (6th Cir. 1968), this Circuit summarized the governing principles in a three-part test for determining whether consistent with due process, personal jurisdiction may be exercised:

> First, the defendant must <u>purposefully avail himself</u> of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from <u>the defendant's activities there</u>. Finally, the acts of the defendant or consequences caused by the defendant must have a <u>substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable</u>. (emphasis added).

401 F.2d at 381. As the Sixth Circuit later stated, "the <u>sine quo non</u> of personal jurisdiction is the purposeful availment factor. <u>Dean v. Motel 6 Operating L.P.</u>, 134 F.3d 1269, 1273 (6th Cir. 1998).

The "purposeful availment" requirement is satisfied when the defendant's contacts with the forum state "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state," and when the defendant's conduct with the forum state are such that he "should reasonably anticipate being haled into court there." <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 474-75 (1985)(<u>quoting</u> World-Wide Volkswagen v. Woodson, 444 U.S. 286 at 297 (1980). Courts require purposeful availment to insure that "random," "fortuitous," or "attenuated" contacts do not cause a defendant to be haled into a jurisdiction. <u>Burger King Corp.</u>, 471 U.S. at 475, <u>citing</u> Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984).

Business is transacted in a state when obligations created by the defendant or business operations set in motion by the defendant have a realistic impact on the commerce of that state; and the defendant has purposefully availed himself of the opportunity of acting there if he should have reasonably foreseen that the transaction would have consequences in that state. <u>Mohasco Indus.</u>, 401 F.2d at 382-83. "The placement if a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state." <u>Asahi Metal Indus. Co. v. Superior Court</u>, 480 U.S. 102 at 112, 117 (1987). "It is the quality of contacts," and not their number or status, that determined whether they amount to purposeful availment. <u>Reynolds</u>, 23 F.3d at 1119.

Plaintiff argues that Defendant DCCI uses Dow Chemical as its United States distributor in

the global marketplace and thus should be subject to the jurisdiction of this Court based on the activities of Dow Chemical, its parent corporation and distributor. Plaintiff relies on the Sixth Circuit's decision in Noel v. S.S. Kresge Co., 669 F.2d 1150 (6th Circuit, 1982) to support that assertion. In Noel, a Japanese distributor, Greenhill, purchased pliers from an unnamed Korean manufacturer for distribution and sell to S.S. Kresge Co. (K-Mart). Id. at 1152. The purchase was made by a K-Mart buyer at Greenhill's place of business, in Osaka, Japan. Id. The sale of the pliers was evidenced by two documents, an "Import Order" which was a printed form of K-Mart and a "Sales Note," which was a printed form of Greenhill. Id. The pliers were purchased as a "Dollar Day Item" and were delivered mounted on cards which identified them as such and stated that they had been manufactured in Korea for K-Mart. Id. Though it was stipulated that Greenhill had no agents or employees in Ohio and had never directly transacted business there, the district court found that due process was not offended by permitting Greenhill to be sued in Ohio. Id. The district court found that a foreign distributor who sells to K-Mart could not reasonably fail to anticipate that the goods would be sold in Ohio which is among K-Mart's "major markets." Id.

The Sixth Circuit affirmed the district court's finding, noting:

> Implicit in the opinion of the district court is a finding that Greenhill
> had at least indirectly sought to serve the market for its products in Ohio
> and that, having delivered them into "the stream of commerce" it must
> reasonably have anticipated that they would be sold in Ohio. There was
> evidence that Greenhill was familiar with K-Mart's operations as a nationwide
> retailer in the United States. In addition this was a very large order and the
> shipping instructions required that Greenhill divide the order and ship the
> pliers to three different United States ports of entry-Newark, N. J., Savannah,
> Ga. and Longview, Wash.

Id. at 1155.

Plaintiff further relies on the Sixth Circuit's decision in Poyner v. Erma Werke Gmbh, 618

10

F.2d 1186 (6th Cir. 1980). In Poyner, a 16-year old youth was injured by a semiautomatic pistor manufactured by Erma Werke Gmbh, a German manufacturer. The Sixth Circuit found that Erma was subject to the jurisdiction of Kentucky courts because of the following:

> L.A. is a New York based distributor of Erma products. Although Erma engaged other distributors at times unspecified in the record, the record reveals that Erma had an agreement with L.A. that the latter would be the sole United States distributor for Erma. The record also shows Erma's efforts to maximize sales in the United States and that the district court found Erma to be "a strong backstage promoter of its products throughout the United States." L.A. conducts nationwide advertising. It sells to a distributor in Lexington, Kentucky, has a salesman in Tennessee and a warehouse in North Carolina, all capable of selling to or servicing customers in Kentucky. L.A. also has solicited business in Kentucky through telephone calls and mail order catalogues. The district court specifically found that "Erma was certainly aware of LA's activities to sell Erma products." We have little difficulty in finding that Erma has purposefully availed itself of the privilege of acting in Kentucky or causing a consequence there.

Id. at 1191.

Unlike in Noel and Poyner, here the record does not demonstrate that Defendant DCCI purposefully availed itself of the opportunity of doing business in Tennessee, northat Defendant DCCI sought, even indirectly, to serve the market for its products in Tennessee. Although Defendant DCCI could have reasonably anticipated that the Dow Chemical Company (a global distributor of many products from many manufactures) would sell their products in Tennessee, Defendant DCCI did not purposefully direct its activities toward Tennessee. Further, there is not any evidence that Defendant DCCI made any efforts to maximize sales in the United States, or that Defendant DCCI was a strong "backstage promoter" of its products throughout the United States. Additionally, Defendant DCCI's distributorship agreement with the Dow Chemical Company was not that Dow Chemical would be the sole United States distributor of DCCI's products, but that Dow Chemical was the sole distributor, period. There is no evidence that Defendant DCCI knew of or

11

promoted Dow Chemical's sale of products in Tennessee.

As to Plaintiff's claims that Defendant DCCI sold "WOODSTALK" to United States customers, including the use of a Nashville distributor, Plaintiff cites the deposition of Ramesh Ramachandran, president of Defendant DCCI. In his final argument in support of personal jurisdiction (Docket Entry No. 58), Plaintiff states that "[Defendant DCCI] sold WOODSTALK through distributors. Nashville Plywood was one of those distributors... [Defendant DCCI] also sold WOODSTALK to Home Depot in the United States..." (Docket Entry No. 58 at 9). Yet, the deposition testimony reveals that Defendant DCCI sells all of its products, and those of its divisions, only through its sole distributor, The Dow Chemical Company. (Docket Entry No. 58, Exhibit 2, page 57, Ramachandran deposition). "The DCCI policy is very, very clear. DCCI will not sell any product to any customer in the United States. It will only sell to T[he] D[ow] C[hemical] C[ompany]." Id.

Plaintiff also relies on the Sixth Circuit's decision in Third National Bank in Nashville v. Wedge Goup Inc., 882 F.2d 1087 (6th Cir. 1989), for the proposition that when a parent corporation involves itself in its subsidiary's daily activities, both the parent and the subsidiary are subject to personal jurisdiction for the subsidiary's acts, is misguided. In fact, the Sixth Circuit held that Wedge Group, Inc. was subject to jurisdiction Tennessee "because [the Court] conclude[d] that the three-part Southern Machine test [wa]s satisfied as to Wedge Group, Inc.. Id. at 1092.

The Sixth Circuit articulated the test for determining amenability of foreign corporations to personal jurisdiction in Velandra v. Regie Nationale Des Usines-Renault, 336 F.2d 292, 297 (6th Cir. 1964):

> The International Shoe decision represented an effort by the Supreme Court
> to clarify earlier concepts in the area of the amenability of foreign corporations
> to the personal jurisdiction of state courts by sweeping aside any lingering
> notions that the earlier shibboleths of 'consent,' 'presence' and 'doing business'
> were self-defining abstractions, and by redefining those tests in terms of

> 'minimum contacts.' Following this decision it would seem appropriate,
> for the purposes of determining the amenability to jurisdiction of a
> foreign corporation which happens to own a subsidiary corporation carrying on
> local activities, to inquire whether the parent has the requisite minimum contacts
> with the State of the forum. Thus the ownership of the subsidiary carrying on
> local activities... represents merely one contact or factor to be considered in
> assessing the existence or non-existence of the requisite minimum contacts with
> the State..., but it not sufficient of itself to hold the parent foreign
> corporations amenable to personal jurisdiction.

Velandra, 336 F.2d at 297.

The Court finds that the facts which Plaintiff has alleged, viewed in the light most favorable to the Plaintiff, do not support a finding that Defendant DCCI purposefully availed itself of the privilege of doing business in Tennessee. Defendant DCCI's contacts to the State are far too attenuated to hold it amenable to personal jurisdiction. There is not any evidence to support a finding that Defendant DCCI's contacts with Tennessee proximately resulted from actions taken by Defendant DCCI's itself that created a substantial connection with Tennessee.

Plaintiff's final argument is that Defendant DCCI failed to cooperate in discovery. (Docket Entry No. 58 at page 9). Plaintiff cites an exchange during the Rule 30(b)(6) deposition of Defendant DCCI's president, Mr. Ramachandran, during which Plaintiff claims Defendant "dodge[d] his 30(b)(6) obligation regarding inquiry into the process by which Defendant DCCI's styrofoam found its way into the Tennessee Titans Coliseum and the Gaylord Entertainment Center."

> Q. (by Plaintiff's Counsel) ... Now, anybody that you talked with regarding
> the Saturn or Nissan plant of the Tennessee Titans Coliseum and Gaylord
> Entertainment Center, just so I'm clear - and if I have asked this and you have
> answered, I apologize - but you didn't ask any of those persons about a process
> where products were distributed after they arrived as TD – okay, TDCC?
>
> A. TDCC?
>
> Q. Yeah.
>
> A: No, I did not ask them.

13

(Docket Entry No. 58 at page 10, citing Exhibit 2, Ramachandran Deposition, at page 112).

Plaintiff, however, fails to mention that Ramachandran did research the process of distribution:

> Q. Two of those topics were the process about which certain of the DCCI's products 'found their way into Nissan and Saturn vehicles made in Midland, Tennessee.' Did you do any research or look at any documents in DCCI regarding that topic?
>
> A...I called people who have worked in Dow Canada... you know, would people have violated the policy that was in place, and everybody said no...
>
> Q. And specifically who did you speak with?
>
> A. Spoke to the Canadian leadership team, so basically Glen Mutscher, Robert... Lacroix, who is the site leader at Fort Saskatchewan; Bob Heisler, who is the leader of HR. Collective experience in Canada of, you know, almost 60, 70 years...
>
> Q. So you asked these persons whether the policy could have been violated, and these products ended up in -- and been distributed to Tennessee. Is that –
>
> A. No I did not.
>
> Q. What did you ask them?
>
> A. I asked them, you know, what is the policy... And they said they understood the policy. That we shipped to TDCC, and TDCC does whatever it does."
>
> Q. Did you ask them if those products could have been incorporated into Nissan and Saturn vehicles through distribution by TDCC?
>
> A. No, because, you know, we sell to TDCC, and after that we are pretty clueless as to what TDCC does with it.
>
> Q. So you didn't make any enquiry as to that process that -- from TDCC to United States?
>
> A. What TDCC does in the United States these people wouldn't know, so – you know, so it's – we didn't discuss that.
>
> Q. Sure. Did you ask anybody else about that process?
>
> A. Customer service, you know. Like, you know, how does, you know, orders by TDCC work and stuff like that.

Q. But you didn't ask anybody about how products – what happened to the products once they left TDCC – once they left DCCI to go to TDCC?

A. Correct.

Q. Okay. And is that the same – I mean same basic facts related to the styrofoam in the Titans Coliseum?

A. Correct, correct.

\* \* \* \* \*

Q. Did you contact anybody at TDCC about these two issues?

A. At TDCC, yeah. I spoke to people in Midland about it, yes... in customer service. I spoke – one name I do remember is Pamela Oberski.

Q. Can you tell me your conversation with Ms.... Oberski?...

A. It was basically the same thing. How was – you know, order entry. How does – you know, is the process being followed. How is the process structured, and things like that.

\* \* \* \* \*

A. I'm telling you what I know, which is that DCCI product went to TDCC. After that what happened to it, I do not know.

\* \* \* \* \*

Q. (By Mr. Bibb, Defendant's Counsel): As president of DCCI, does any DCCI employee have access to information as to how TDCC may choose to distribute – or the process that TDCC uses to distribute DCCI products?

A. No, they wouldn't have access to that.

(Docket Entry No. 58, Exhibit 2 at page 108-116).

Further, Ramachandran's testimony makes clear that TDCC is a global distributor and buys styrofoam from across the globe, and therefore DCCI can not determine the destination of a product. Id. at 114-116. Only TDCC would know where it distributed DCCI product. Id. At 113-114.

A party testifying at a Rule 30(b)(6) deposition is obligated to "testify as to matters known

15

or reasonably available to the organization." Fed. Rule of Civ. P. 30(b)(6). The Court finds that Defendant DCCI satisfied this obligation as it relates to the process by which Dow Canada's styrofoam found its way into the Tennessee Titans Coliseum and the Gaylord Entertainment Center.

Plaintiff also claims that Defendant DCCI's counsel would not allow a key response bearing on the relationship between TDCC and Defendant DCCI. "The Plaintiff seeks to prove that Dow Canada's trucks have delivered or picked up products in Tennessee for Dow Chemical." (Docket Entry No. 58 at page 11). Plaintiff cites a lengthy portion of the Ramachandran deposition, but the Court notes the relevant exchange:

> Q. (by Plaintiff's Counsel): As it pertains to either Saturn or Nissam or Titans Coliseum or Gaylord Entertainment Center, has that ever happened?
>
> A. Has what ever happened?
>
> Q. Has DCCI ever sent a truck to the state of Tennessee?
>
> A. Not that I'm aware of.
>
> Q. Has DCCI ever received any materials from any one of those locations?
>
> A. From the three locations you listed, not that I'm aware of.
>
> Q. Has Dow Chemical ever instructed DCCI to send any materials to those locations, or to Tennessee?
>
> A. They cannot, right. That's what I keep – we go back to we give it to TDCC. TDCC can take it to those locations it they want to.

Id. at 104-106. The Court finds no merit in Plaintiff's contention that Defendant DCCI failed to cooperate in discovery.

Accordingly, Plaintiffs' claims against Defendant DCCI are dismissed for lack of personal jurisdiction, but without prejudice to the merits of Plaintiff's claims.

An appropriate Order is filed herewith.

It is so **ORDERED**.

16

**ENTERED** this the 1st day of February, 2006.

WILLIAM J. HAYNES, JR.
United States District Judge